## IN THE UNITED STATES COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) DAKOTA SIMCO-HORVATH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **(1) STEVEN BLAKE BREWER,** ) | |
| in his individual capacity; ) | |
| ) | |
| **(2) BOARD OF COUNTY** ) | |
| **COMMISSIONERS FOR** ) | |
| **OKLAHOMA COUNTY;** ) | **Case No.**  CIV-21-514-G |
| ) | |
| **(3) BOARD OF TRUSTEES FOR THE** ) | |
| **OKLAHOMA COUNTY CRIMINAL** ) | |
| **JUSTICE AUTHORITY;** ) | |
| ) | |
| **(4) TOMMIE JOHNSON, III,** in his ) | |
| official capacity; ) | |
| ) | |
| **(5) PAUL D. TAYLOR,** in his official ) | |
| and individual capacities; ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

COMES NOW Plaintiff, Dakota Simco-Horvath (Dakota), for his causes of action against

Defendants Steven Blake Brewer (Brewer), Board of County Commissioners for Oklahoma County

(BOCC), Board of Trustees for The Oklahoma County Criminal Justice Authority (Jail Trust), Tommie

Johnson, III (Johnson), and Paul D. Taylor (Taylor).

## THE PARTIES

1. Plaintiff Dakota is a resident of Pontotoc County, Oklahoma but was incarcerated in the Oklahoma

   County Detention Center at the time of the incident hereinafter described.

2. Defendant Brewer was, at all times relevant hereto, a jailor, employed by and working for Defendant Oklahoma County BOCC and/or Defendant Taylor.

3. Brewer engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Oklahoma County BOCC and/or Defendant Taylor.

4. Defendant Taylor was, at all times relevant hereto, the duly-elected Sheriff of and for Oklahoma County.

5. At the time of the incident, Taylor had final policy-making authority to establish policies, procedures, practices and customs at the Oklahoma County Detention Center, including but not limited to the training of jailors and the use of force by jailors in the Oklahoma County Detention Center.

6. Defendant Taylor engaged in conduct complained of under color of law and within the scope of his employment as the duly-elected Sheriff of and for Oklahoma County.

7. Defendant BOCC is the entity charged with administration of county governmental services in Oklahoma County, including but not limited to the Oklahoma County Detention Center.

8. At the time of the incident, BOCC had final policy-making authority to establish policies, procedures, practices and customs at the Oklahoma County Detention Center, including but not limited to the training of jailors and the use of force by jailors in the Oklahoma County Detention Center.

9. Defendant Jail Trust is the entity currently charged with administration of county governmental services at Oklahoma County Detention Center. Jail Trust took over control and assumed final

policy-making authority on July 1, 2020.  As such, Jail Trust is the appropriate party to be named for the municipal liability claims alleged herein.

10. Defendant Johnson is currently the duly-elected Sheriff of and for Oklahoma County. Johnson took over control of and assumed final policy-making authority over the Oklahoma County Detention Center on January 4, 2021. As such, Johnson is the appropriate party to be named for the municipal liability claims alleged herein.

11. The policies, practices and customs, promulgated, created, implemented and/or utilized regarding jailor use of force by Defendant Brewer, represent the official policies and/or customs of the Oklahoma County Detention Center.

## JURISDICTION AND VENUE

Plaintiff incorporates all previous allegations and statements and further alleges the following:

12. This action arises from an incident that occurred in Oklahoma County, Oklahoma.

13. At all material times mentioned herein, Brewer was acting within the scope of his employment and/or authority as an employee/agent of the Oklahoma County Sheriff's Office.

14. In the alternative, Brewer was acting outside the scope of his employment, such that the Oklahoma Governmental Tort Claims Act, 51 O.S. § 153(C) does not exempt Brewer from personal liability for his tortious conduct.

15. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the parties hereto, jurisdiction over the subject-matter hereof, and venue is proper.

## FACTUAL BACKGROUND

Plaintiff further incorporates all previous allegations and statements and further alleges as the following:

16. This action arises from an incident that occurred on or about May 23, 2019, at the Oklahoma County Detention Center (OCDC).

17. Since its construction in 1991, the Oklahoma County Detention Center has been riddled with problems. Many of those issues, including but not limited to overcrowding, understaffing, inadequate security and supervision, wide-spread unreasonable use of force by staff, inadequate access to medical care, and deficient housing, sanitation and environmental protections continue to threaten the health and well-being of inmates confined there today.

18. On July 31, 2008, the United States Department of Justice, Civil Rights Division, (DOJ) concluded a more than five (5) year investigation into the OCDC to "ensure that conditions at the Jail meet federal constitutional requirements." (U.S. DOJ, Re: Investigation of the Oklahoma County Jail and Jail Annex, Oklahoma City, Oklahoma, July 31, 2008, p. 1)(hereinafter "DOJ Report).

19. The report summarized the conclusions of the DOJ as follows:

> Having completed the fact-finding portion of our investigation, we conclude that certain conditions at the Jail violate the constitutional rights of detainees confined there. As detailed below, we find that the Jail fails to provide for detainees': (1) reasonable protection from harm; (2) constitutionally required mental health services; (3) adequate housing, sanitation and environmental protections; and (4) protection from serious fire-safety risks.

(DOJ Report, p. 2)

20. As used in the DOJ Report, the term "detainees" includes both pre-trial detainees and post-adjudication inmates. (See, DOJ Report, Fn. 2).

21. The DOJ Report analyzed conditions at the OCDC in light of Fourteenth and Eighth Amendment standards. (DOJ Report, p. 3).

22. A copy of this DOJ Report was sent to Defendant BOCC, Defendants Johnson or Jail Trust, in their official capacity by sending it to John Whetsel, Oklahoma County Sheriff in 2008, as well as

the Oklahoma County District Attorney and the United States Attorney for the Western District. As such, Defendants BOCC, Taylor, Johnson and Jail Trust were on notice and aware of the constitutional deficiencies addressed by the DOJ Report.

23. In a section of the DOJ Report entitled "Constitutional Deficiencies", the DOJ made Defendants BOCC, Taylor, Johnson and Jail Trust aware prior to May 2019 that the facility "does not have sufficient bed space for this size of population." (DOJ Report, p. 4: "We found detainees sleeping on the floor and three or four detainees locked into two-man cells. The detainees spend nearly 24-hours per day in these cramped quarters.").

24. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that "the excessive number of detainees in close quarters contributes to issues such as increased violence among detainees and the grossly unsanitary condition of the cells." (DOJ Report, fn. 4).

25. The shortage of staff at the jail has contributed to a lack of control over the prisoners at the OCDC.

26. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that as a result of overcrowding and inadequate staffing, "[j]ail staff frequently resort to the use of force to control events. Although such use of force incidents are not *per se* inappropriate, between January 2006 and March 2007 there were 1,337 reported use of force incidents. In the opinion of our expert, this is an inordinately high number of use of force incidents for a facility the size of the Jail." (DOJ Report, p. 8).

27. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that the OCDC's investigation into serious events, including use of force against detainees/inmates by staff is

"inadequate to prevent an adequate understanding of the causes leading to an event, or to implement measures to prevent future, similar events." (DOJ Report, p. 12).

28. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that detainees/inmates were forced to sleep "under tables, next to toilets, and underneath bunk beds" due to overcrowding issues, and that "[t]hese cramped conditions breed inadequate sanitation." (DOJ Report, p. 17).

29. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that "the toilet and drinking water are small unites with the faucet and basin just above the uncovered, foul smelling, filthy commode stool." (DOJ Report, p. 17).

30. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that "[i]f a detainee needs water, the detainee has to cup his hand under the faucet and lap water from his hands close above the filth of the toilet bowl." (DOJ Report, p. 17).

31. Defendants BOCC, Taylor, Johnson and Jail Trust were aware prior to May 2019 that detainees/inmates would leave their cells to use the restroom due to policies and procedures that resulted in the overcrowding and unsanitary conditions described herein.

32. Defendant BOCC entered into a memorandum of understanding with the Department of Justice in 2009 that required the Oklahoma County to adequately fund and staff the jail by 2014, or face court action from the federal government to force compliance. As of May 2019, Oklahoma County had not complied with the requirements of its memorandum of understanding with the Department of Justice.

33. Despite being aware of the "inordinately high number of use of force incidents" against detainees/inmates and in direct non-compliance with the 2009 memorandum of understanding

with the Department of Justice, violence against detainees/inmates continued from 2008 to May 2019 at an alarming rate.

34. From 2008 to May 2019, at least eight (9) OCDC jailers have been criminally charged and/or civilly sued for assaulting and battering detainees/inmates, including:

    a. Thomas Urioste – March 8, 2008 – No criminal charges – inmate stripped, kneed in back while lying face down, and face slammed into concrete floor

    b. Travis Ingram – July 2012 – Assault and Battery Charge – choking inmate while inmate was handcuffed and shackled

    c. Michael Coleman -August 27, 2012 – Assault and Battery Charge – beating inmate with a set of metal keys

    d. John Jacobson – CM-2014-338 – 12-1-2013 – Assault and Battery Criminal Charge – twisting arms and punching inmate in torso while handcuffed

    e. Jose Botello – 12/1/2013 – Assault and Battery Charge – twisting arms and punching inmate in torso while handcuffed

    f. Andres Sanchez – December 2013 – second-degree manslaughter – knee on neck and back – Twisted arm to point of causing so much internal bleeding that inmate died

    g. Colton Ray – April 19, 2017 – SERT (Special Emergency Response Team) – Felony Assault and Battery with a dangerous weapon – shot inmate with pepper balls (contributing factor to inmate's death)

    h. Brian Harrison – April 19, 2017 – Special Emergency Response Team (SERT) – Felony Assault and Battery with a dangerous weapon – shot inmate with pepper balls (contributing factor to inmate's death)

    i. Joseph Leroy Hedderman – April 8, 2019 – Assault and Battery Criminal Charge – Pepper spraying and kicking female inmate

35. Many of the charges stem from uses of force against prisoners who left their cells at unauthorized times to shower or use the restroom amid jail staffing shortages.

36. From 2009 to February 2021, there have been eighty-four (84) deaths at the OCDC. The average annual death rate was 3.3 per 1,000 inmates, more than double the national average. (The Frontier, Oklahoma County promised to fix its jail more than 10 year ago, but deaths and staffing issues continue, published February 21, 2021).

37. From 2016 to March 2019, approximately thirty-five (35) inmates died in the OCDC.

38. Numerous other staff use of force incidents were reported from 2009 to May 2019 that did not lead to inmate death or criminal charges against the jailer(s).

39. In 2016, the DOJ threatened

40. In February 2019, Oklahoma County Special Judge Geary Walke stated that Oklahoma County's mental health court will no longer keep its participants awaiting treatment in the custody of the jail. Instead they will be released on their own recognizance.

41. Judge Walke is quoted as saying "Unfortunately, our jail is not the sort of place that we can consider a safe place for our people."

42. The Federal Bureau of Prisons removed all federal detainees from the OCDC in 2008 because of the dangers posed by the conditions at OCDC.

43. Numerous news and internet articles also made Defendants BOCC, Taylor, Johnson and Jail Trust aware prior to May 2019 of the unreasonable conditions at the OCDC, for example:

   a.  "Over the past 15 years, the 13-story jail, in Oklahoma City has had many alleged problems, from unsanitary conditions to negligent care of inmates, poor medical care, and outright abuse of inmates. A clerical worker at the jail posted a YouTube video claiming inmates had been beaten right in front of her." (Business Insider, The stories coming out of this Oklahoma jail are horrifying, February 25, 2015).

b. "It is ridiculously overcrowded, although steps are being taken to rectify that situation. There have been a surprising number of deaths over the past two years in the jail. The plumbing and the sewage systems are horrible—so horrible that they affect the rest of the city." (American Bar Association Journal, Netflix's new series 'First and Last' accurately details many aspects of county jail life, September 20, 2018.

44. Despite being aware of the unconstitutional conditions at the OCDC and a pattern and practice amongst jailers to use unreasonable and excessive force on detainees/inmates, Defendants BOCC, Taylor, Johnson and Jail Trust deliberately disregarded the substantial risk of serious harm that existed on or about May 23, 2019 to detainees/inmates, including Plaintiff to be injured as a result of the unconstitutional conditions at the OCDC and a pattern and practice amongst jailers to use unreasonable and excessive force on detainees/inmatesPlaintiff was serving time in the OCDC.

45. Due to overcrowding in his cell, along with unsanitary conditions in the OCDC, as pointed out by the DOJ nearly eleven (11) years prior and not remedied despite repeated incidents, warnings and warning signs, Plaintiff left his cell on the tenth (10th) floor to use the restroom in an empty cell on the eleventh (11th) floor so as to not make his overcrowded cell more unsanitary than it already was.

46. While Plaintiff was sitting on the toilet in the middle of a bowel movement, a guard walked into the bathroom and told Plaintiff to get off the toilet and to return to his cell.

47. Plaintiff, being part way through his bowl movement, told the guard it was "too late, I've already started going."

48. Defendant Brewer, a member of the Special Emergency Response Team was present. Defendant Brewer is reported to be 6 foot, 2 inches and 280 lbs.

49. While Plaintiff was rushing to wipe himself, Defendant Brewer threatened Plaintiff with bodily harm if Plaintiff was not back in his cell within three (3) seconds.

50. Plaintiff responded that he was "finishing up."

51. Defendant Brewer continued counting to three (3) while Plaintiff wiped and told Brewer that Plaintiff was "finishing up."

52. As Plaintiff was looking down to dispose of the soiled toilet paper, Defendant Brewer placed handcuffs over his knuckles.

53. At no point did Plaintiff pose a threat to Defendant Brewer or anyone else.

54. At no point did Plaintiff pose a threat to Defendant Brewer or anyone else that would make using handcuffs like brass knuckles reasonable under the circumstances.

55. Defendant stated the number "three" and then without delay or warning, struck Plaintiff in the forehead, using the handcuffs like brass knuckles to inflict unlawful and unreasonable punishment on Plaintiff and increase the amount of pain and injury Plaintiff would suffer.

56. As a result of the blow, Plaintiff suffered severe injuries, including a significant cut on Plaintiff's head.

57. Plaintiff did nothing to provoke Defendant Brewer to use such an egregious level of force.

58. After this initial blow, Defendant Brewer immediately swung at Plaintiff a second time with his handcuffs over his knuckles, making direct contact with Plaintiff's face and slicing Plaintiff's left ear.

59. Defendant Brewer's second strike knocked Plaintiff to the ground and made Plaintiff lose consciousness.

60. While Plaintiff was lying on the ground the other guard, who has not yet been identified, struck Plaintiff in the stomach with his/her knee.

61. No weapons were found on Plaintiff's person or in his vicinity.

62. No force or much less force could have been used to gain control of the situation.

63. Plaintiff laid in a pool of his own blood for some time before he was taken to a nurse and examined.

64. Plaintiff asked to go to a hospital but his request was denied.

65. The nurse used a staple gun to staple Plaintiff's head 12 times to seal Dakota's gaping head wound. The nurse also treated Dakota's ear.

66. Defendant Brewer's brutal assault disfigured Plaintiff and left him embarrassed and violated.

67. Defendants BOCC, Taylor, Johnson and Jail Trust did not discipline Defendant Brewer for beating Plaintiff.

68. Defendant Brewer by remained employed at the OCDC for numerous months after he beat Plaintiff.

69. Defendants BOCC, Taylor, Johnson and Jail Trust ratified Defendant Brewers conduct and the basis for Defendant Brewer's conduct.

70. Defendant Brewer's conduct in striking Plaintiff was in accordance with the known pattern and practices at the OCDC; said practices existing for many years at the OCDC and having been investigated by the DOJ and widely reported in the news.

71. Approximately fifteen (15) months later, on August 6, 2020, in accordance with the known practices at the OCDC which were ratified and accepted by the policy-makers, Defendant Brewer used unreasonable and excessive force again when he punched a naked female inmate in face and body; and then used knee strikes and O.C. spray on the naked female inmate.

72. On or about January 26, 2021, Brewer was criminally charged in Cleveland County for Impersonating a Public Officer by Uniform or Badge. The resolution of that case is also pending.

73. Plaintiff requested to file charges and/or grievances related to being brutally beaten by Defendant Brewer. In response, Plaintiff was intentionally intimidated by Defendants BOCC, Taylor, Johnson and Jail Trust through its jail personal in an effort to keep him quite about the attack.

74. As further evidence that the use of unreasonable force was and is a widespread pattern and practice at the OCDC, at least eight (8) more OCDC jailers have been criminally charged with assaulting, batterying, and cruelty to prisoners since May 23, 2019 when Plaintiff was injured, including:

    a. Christopher Hendershott - November 2, 23, and 30, 2019 – cruelty to prisoners, corporal punishment to an inmate, conspiracy – leaving inmates cuffed to bar for extended periods sometimes while playing "Baby Shark" on repeat as a form of torture

    b. Greg Butler – November 2, 23, and 30, 2019 – cruelty to prisoners, corporal punishment to an inmate, conspiracy – leaving inmates cuffed to bar for extended periods sometimes while playing "Baby Shark" on repeat as a form of torture

    c. Christian Miles - November 2, 23, and 30, 2019 – cruelty to prisoners, corporal punishment to an inmate, conspiracy – leaving inmates cuffed to bar for extended periods sometimes while playing "Baby Shark" on repeat as a form of torture

    d. Ebony Rogers – August 18, 2020 – Assault and Battery Criminal Charge – Punching inmate 18 times

    e. Patrick Smith – August 18, 2020 – Assault and Battery Criminal Charge – Punching inmate 18 times

    f. Antonio Padin Rivera – February 2, 2021 – Assault and Battery Criminal Charge – shoving inmate

    g. Richard Blane Clark – February 2, 2021 – Assault and Battery Criminal Charge – Pepper spraying inmate

    h. Frantz Desir – March 22, 2021 – Assault and Battery Criminal Charge – shoving inmate

75. The policies, practices and customs of Defendants BOCC, Taylor, Johnson and Jail Trust in permitting and encouraging jailers to use excessive force on inmates were the moving force behind Plaintiff's injuries.

76. Defendants BOCC, Taylor, Johnson and Jail Trust's deliberate indifference to the DOJ Report's warning that, as a result of overcrowding and inadequate staffing, "[j]ail staff frequently resort to the use of force to control events" was the direct and foreseeable cause of Plaintiff's injuries, which occurred because Plaintiff left his overcrowded, unsanitary cell to use the restroom, causing understaffed jailers to resort to the use of force.

## CAUSES OF ACTION

### COUNT I
### CONDITIONS OF CONFINEMENT

Plaintiff incorporates all previous allegations and statements and further alleges the following:

77. Under the Eighth Amendment of the United States Constitution, inmates held in American prisons have a fundamental right to prison conditions that do not constitute "cruel and unusual punishment."

78. Detainee and inmate living conditions must be reasonably sanitary and safe.

79. At a minimum, prison officials must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. They cannot deprive prisoners of the basic elements of hygiene or the minimal civilized measure of life's necessities.

80. The conditions at the OCDC denied Plaintiff basic elements of hygiene and the minimal civilized measure of life's necessities. The result of those known conditions exposed Plaintiff to a substantial risk of serious harm.

81. The deplorable conditions were easily observable by Defendants and all Defendants were aware that the conditions imposed upon Plaintiff denied him of his constitutional rights.

82. No unforeseeable, exigent circumstances existed which would have prevented Defendants from mitigating the risks associated with Plaintiff's conditions of confinement.

## COUNT II
## EXCESSIVE USE OF FORCE

Plaintiff incorporates all previous allegations and statements and further alleges the following:

83. Under the Fourth Amendment of the United States Constitution, every person in the United States of America has the right to be secure against unreasonable seizures of their person. 42 U.S.C. § 1983 prevents individuals from acting in a governmental capacity or under color of law to deprive citizens of those rights and sets up a system to allow citizens to sue governmental officials in their official capacities when they violate the Fourth Amendment.

84. Defendant Brewer's conduct on May 23, 2019, specifically—viciously striking and injuring Plaintiff—clearly violated the Fourth Amendment's protections.

85. A reasonable law enforcement officer in Defendant Brewer's position should know that smashing a man's head with improvised steel knuckles made from handcuffs, is not a reasonable seizure when the man is no threat to anyone and is simply trying to finish using the restroom.

86. Defendant Brewer had a duty to refrain from violating Dakota's constitutional rights.

87. The force that Defendant Brewer used was excessive and unreasonable under the totality of the circumstances.

88. No legitimate objective was accomplished by the degree of such force utilized by Defendant Brewer.

89. The use of force by Defendant Brewer against Plaintiff posed a substantial risk of causing death or serious bodily harm to Plaintiff. That risk was known to Defendant Brewer when he chose to strike Plaintiff.

90. Defendant Brewer's use of force did in fact cause great bodily harm.

91. The above-described conduct of Defendant Brewer was a direct and proximate cause of the deprivation of Plaintiff's clearly established Fourth Amendment rights, as well as Plaintiff's injures.

92. Defendant Brewer, under color of law, unjustifiably used excessive force, and thus violated Plaintiff's constitutional rights and is therefore, "liable...in an action at law, suit in equity, or other proper proceeding for redress...," as per 42. U.S.C. § 1983.

93. Upon information received, Plaintiff has reason to believe that OCDC's unconstitutional policies and practices, and inadequate training and supervision on use of force has resulted in the widespread use of excessive force on detainees and inmates.

94. Defendant Brewer inflicted unreasonable, unnecessary, excessive and negligent force upon Plaintiff and failed to exercise the care of a reasonably prudent and qualified officer while engaged in an activity undertaken for the safety of the public.

95. The actions of Defendant Brewer establish that he was not properly trained regarding the use of force or, in the alternative, that he failed to follow such training and that the other named Defendants failed to properly enforce such policies.

96. The above-described wrongful acts are proof of a policy in which Defendants deny citizens the rights, privileges, and immunity guaranteed to them by the United States Constitution, the laws of the United States, and the laws of Oklahoma.

97. This policy has no justification or excuse under the law but instead is improper, illegal, deliberately indifferent, and negligent and is unrelated to any activity in which law enforcement officers properly and legally carry out their sworn duty to enforce laws, protect persons and property, and ensure civil order.

98. Defendants BOCC, Taylor, Johnson and Jail Trust were aware or reasonably should have been aware of this policy and did not act to correct it, constituting negligent and deliberately indifferent supervision and training.

99. Defendants BOCC, Taylor, Johnson and Jail Trust were negligent in the selection, appointment, training, supervision, and retention of their agents and employees, in that these Defendants knew or should have known their agents and employees were carrying out these policies. Defendants BOCC, Taylor, Johnson and Jail Trust directly or indirectly allowed an attitude that encouraged law enforcement officers to use tactics and procedures violating citizens' right to life, liberty, and property in a manner that is reckless, irresponsible, dangerous, and negligent to the community at large and to Plaintiff and, in fact, had a policy of using unwarranted excessive force against citizens.

100. Despite Defendants BOCC, Taylor, Johnson and Jail Trust knowing (or reasonably should have known) that this policy was being carried out, Defendants BOCC, Taylor, Johnson and Jail Trust failed to remove the individual Defendants from their positions, to take any disciplinary action, or provide redress for citizens, such as Plaintiff, who have been injured by such officers, and most

importantly, put an end to the use of unwarranted excessive force.

101. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendant Brewer reasonably understood them to be, could have reasonably believed Plaintiff had committed any offense, which required or authorized the use of such excessive force.

102. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendant Brewer reasonably understood them to be, could have reasonably believed that the amount of force utilized was necessary or warranted in the situation.

103. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendant Brewer reasonably understood them to be, could have reasonably believed Plaintiff needed to be punched with handcuffs over his knuckles.

104. The actions of Defendants were negligent, intentional, reckless, willful, and deliberate and showed gross and reckless disregard for Plaintiff's rights.

105. Defendants' acts and omissions were a direct and proximate cause of the harm to Plaintiff and his injuries.

106. The actions of Defendants BOCC, Taylor, Johnson, Jail Trust and Brewer were done willfully, maliciously, unlawfully, and with callous and reckless indifference in total disregard of Plaintiff's safety and continued health. Therefore, Plaintiff is entitled to compensatory and punitive damages (against the individual capacity Defendants) along with his attorney's fees.

107. Plaintiff has incurred necessary and reasonable medical and hospital expenses.

## COUNT III
## DELIBERATELY INDIFFERENT POLICIES, PRACTICES AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION

Plaintiff incorporates all previous allegations and statements and further alleges the following:

108.   Defendants BOCC, Taylor, Johnson and Jail Trust were aware or should have been aware that pursuant to 22 O.S. § 34.1 "[e]ach law enforcement entity which employs any peace officer shall adopt policies and guidelines concerning the use of force by peace officers which shall be complied with by peace officers in carrying out the duties of such officers within the jurisdiction of the law enforcement entity."

109.   It is clearly established that Defendants BOCC, Taylor, Johnson and Jail Trust must train and supervise jailors about proper procedures for dealing with inmates in tense situations and to train jailors in the reasonable use of force to avoid constitutional injury.

110.   Defendants BOCC, Taylor, Johnson and Jail Trust have an affirmative duty to take action to properly train and supervise its employees or agents and prevent their unlawful actions.

111.    The above-described conduct reflects an established policy, practice, custom, or decision, officially adopted or informally accepted, ratified or condoned by Defendants BOCC, Taylor, Johnson and Jail Trust, and their officials and employees, that consists of consistently allowing and training jailors to use excessive physical force against inmates.

112.    Defendants BOCC, Taylor, Johnson and/or Jail Trust was the official policymaker and final decision-maker for the OCDC.

113.    Defendants BOCC, Taylor, Johnson and Jail Trust failed to properly train and supervise its employees or agents in a manner and to an extent that amounts to deliberate indifference or even tacit encouragement of constitutional violations. Defendant Brewer engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

114.    Under information and belief, Defendants BOCC, Taylor, Johnson and Jail Trust had a policy, custom, and procedure of not ensuring that officers like Defendant Brewer were appropriately and adequately trained on when and under what circumstances to use force.

115.    Defendants BOCC, Taylor, Johnson and Jail Trust had a duty to inform themselves about instances when jailors used force inside of the detention center.

116.    Defendants BOCC, Taylor, Johnson and Jail Trust knew or should have known that Defendant Brewer had used excessive force against Dakota.

117.    Upon learning of the battery committed by Defendant Brewer, Defendants BOCC, Taylor, Johnson and Jail Trust had a duty to take steps to remove Defendant Brewer from the detention center to prevent further constitutional violations and protect the safety of the inmates.

118.    Defendants BOCC, Taylor, Johnson and Jail Trust did not timely remove Defendant Brewer from the detention center.

119.    Because Defendants BOCC, Taylor, Johnson and Jail Trust did not remove Defendant Brewer from the detention center more unreasonable uses of force on inmate(s) took place.

120.    Defendants BOCC, Taylor, Johnson and Jail Trust, acting through subordinate law enforcement officers, had a persistent, widespread practice of depriving inmates of their constitutional rights, that this practice was sufficiently common and well established as to constitute municipal policy or custom.

121.    These customs or policies of unconstitutional conduct, as shown by the acts and omissions of other subordinate law enforcement officers as well as the continued employment of Defendant Brewer at the Detention Center, demonstrates the governing body's knowledge and acceptance of such conduct.

122.    Defendants BOCC, Taylor, Johnson and Jail Trust understood or should have understood that jailors, such as Defendant Brewer:

    a.  could and would exceed constitutional limitations on the use of force;

    b.  that the use of force may arise under circumstances that constitute a usual and recurring situation at the detention center;

    c.  that providing inadequate training or failing to enforce existing policies under such circumstances demonstrates deliberate indifference on the part of the Defendants toward persons with whom Brewer would come into contact;

    d.  and that failing to provide such training or to enforce policies and procedures to ensure that Brewer followed such training would be a direct  link between the constitutional deprivation to which citizens, such as Plaintiff, would be exposed. In other words, at the time Defendants placed steel handcuffs on the belt of Defendant Brewer and sent him

to the detention center, it was obvious that failing to adequately train him or enforce policies and procedures to reign in his conduct, would likely result in the violation of inmates' Fourth Amendment rights.

123.    Inadequate training and supervision of Defendant Brewer, was so likely to result in grave constitutional injury to inmates, that the failure to provide adequate training and supervision constituted a deliberate indifference to, and acquiescence in, Plaintiff's injury.

124.    Defendant Brewer's actions stem from the execution of a government policy, custom, or official decision of indifference and his actions can fairly be said to represent such a policy and custom.

## PUNITIVE DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges the following:

125. Plaintiff is entitled to punitive damages on his claims brought against the individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute intentional, reckless, or callous indifference to Plaintiff's Constitutionally protected rights.

## DEMAND FOR JURY TRIAL

126. Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

127. Plaintiff reserves the right to plead further upon completion of discovery, to state additional claims and to name additional parties to this action.

## CONCLUSION

WHEREFORE, Plaintiff, Dakota Simco-Horvath prays for judgment against Defendants in a sum excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000.00) plus interest, attorneys fee, costs, and all such other relief as to which Plaintiff may be entitled.

Respectfully submitted,

LAIRD, HAMMONS, LAIRD, PLLC


    s/Jason M. Hicks
Chris Hammons, OBA # 20233
Jason M. Hicks, OBA# 22176
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone:    (405) 703-4567
Facsimile:    (405) 703-4061
E-mail: chris@lhllaw.com
            jason@lhllaw.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**

22